JODI LINKER
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:  Daniel_Blank@fd.org

Counsel for Defendant REVELS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TYLER REVELS,<br><br>    Defendant. | Case No.: CR 21–0403 VC<br><br>**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**<br><br>**Court:**  Hon. Vince Chhabria<br>**Date:**  June 15, 2023<br>**Time:**  10:00 a.m. |

**ARGUMENT**

Defendant Tyler Revels is pleased to submit this sentencing memorandum to supplement his prior memorandum filed August 2, 2022, which is respectfully reasserted and incorporated here by reference.  *See* Dkt. 57 & Att. A-B.  Mr. Revels was recently found competent to proceed to sentencing, consistent with a report from the BOP dated May 11, 2023.[1]  In total, Mr. Revels has served over 10 months in custody, including continuous custody since August 1, 2022, plus one week in October 2021.  *See* PSR at 1.  For the reasons set forth below, Mr. Revels respectfully renews his request for a sentence of "time served" to be followed by three years supervised release.

---

[1] This report by BOP Forensic Psychologist Dr. Jamie Jauregui [hereinafter "BOP Report"] was mailed directly to the Court from MCC San Diego.

I.   **OBJECTIONS TO PRESENTENCE REPORT RESPECTFULLY MAINTAINED**

As an initial matter, before applying the other sentencing factors under 18 U.S.C. § 3553(a), the Court must correctly calculate the advisory guideline range and rule on any unresolved objections. Here, there are two such unresolved objections from the defense.

   A.   **Base Offense Level under U.S.S.G. § 2K2.1 is Improperly Enhanced**

The U.S. Probation Officer calculates the base offense level to be 20 under U.S.S.G. § 2K2.1(a)(4)(A) due to a prior conviction for a crime of violence, based upon a 2018 conviction for inflicting corporal injury on a spouse or cohabitant under California Penal Code 273.5(a). PSR ¶ 22. However, the base offense level should instead be 14.

Following the Supreme Court's decision in *Borden v. United States,* 141 S. Ct. 1817 (2021), a prior conviction as here under California Penal Code § 273.5 no longer qualifies as a "crime of violence" under USSG 2K2.1, because such a conviction does not require proof that a defendant was aware that his intentional conduct would harm another. *See Borden,* 141 S. Ct. at 1824–25; *see also Somers v. United States,* 15 F.4th 1049, 1053 (11th Cir. 2021) (holding that under *Borden* "the elements clause requires both the general intent to volitionally take the action of using, attempting to use, or threating to use force and something more: that the defendant direct the action at a target, namely another person"). The leading 9th Circuit case to the contrary, *United States v. Walker,* 953 F.3d 577 (9th Cir. 2020), relies on previous jurisprudence that does not survive the Supreme Court's decision in *Borden,* which established that an offense cannot qualify as a crime of violence if a conviction does not necessarily establish that, when the defendant intentionally engaged in forceful conduct, he did so with the intent of harming another. (No precedential case from the Ninth Circuit has addressed this issue since *Borden* was decided.) Section 273.5 does not require a defendant to even be aware that his intentional conduct could harm another, let alone that the defendant actually intend to harm someone.

Accordingly, after *Borden,* a prior conviction under section 273.5 cannot serve to enhance the base offense level as a crime of violence under § 2K2.1. As a result, the base offense level for Mr. Revels should be 14, rather than 20. The applicable advisory guideline range that then results would be 33 to 41 months, based upon Total Offense Level 13 and Criminal History Category VI.

**B.     JSIN Data Presented Here is Unreliable and Misleading**

There is also an unresolved objection to the inclusion in the Presentence Report of data from the Judiciary Sentencing Information (JSIN) database. *See* PSR ¶¶ 95-98; PSR Addendum ¶¶ 5-11. As noted in the PSR Addendum, the defense generally objects to the inclusion of such JSIN data as not identified in Rule 32 or in Monograph 107 as an item that should be in a Presentence Report. Moreover, especially as applied in this case, the JSIN data is particularly unreliable and misleading.

The Probation Officer describes the JSIN sentencing data here as reliably applicable to defendants who are "similarly situated" to Mr. Revels, but that description is unsupported. PSR ¶ 119. The "n" – *i.e.,* the number of other defendants whose sentences were used to compile the data here – is 586. PSR ¶ 120. However, the model used by JSIN database is faulty even with a statistically significant sample size. JSIN provides aggregate statistics for all defendants that fall in a particular guidelines cell (offense level and criminal history category), but the offenders included in this cell are not necessarily "similar" and there is no way to determine in which ways they are similar or dissimilar. Their inclusion in the report is misleading and contrary to an individualized assessment of defendants to be sentenced, as required under 18 U.S.C. § 3553(a).

Specifically, the specific JSIN sentencing statistics in this case supposedly representing mean and median length of imprisonment are misleading for several reasons. First, they do not indicate how the sentences are distributed (*e.g.,* clustered toward bottom with few high outliers, evenly distributed, *etc.*). They also exclude cases missing the information needed to complete the analysis. Therefore, the statistics necessarily present an incomplete and misleading picture. Second, they mis-categorize, as a sentence imposing a term of imprisonment, all those cases where the defendant received a sentence that was either explicitly identified as "time served" or was effectively time served. This omission would tend to skew the results higher than is warranted. Third, the statistics are aggregated at the national level and are not reflective of this district. If JSIN statistics are to be included, the corresponding statics for the Ninth Circuit and Northern District of California should also be included. Accordingly, the data does not represent "similarly situated" defendants.[2]

---

[2] Of course, the JSIN data in the Presentence Report here are also inapplicable because they address sentencings that result from a guideline range that is improperly enhanced here by treating a prior

1   For these reasons, this information is too misleading and unreliable in its present form for the
2   Court here to meaningfully rely upon it in any way. Doing so in this case would violate both the
3   applicable rules and statutes regarding Presentence Reports, as well as the Due Process Clause.
4   Accordingly, the JSIN data should not be given any substantial weight here.

5   **II.    SENTENCE OF "TIME SERVED" IS WARRANTED UNDER § 3553(a) FACTORS**

6   Mr. Revels has already served the equivalent of one year custody (taking into account the
7   ordinary good-time credits). For the reasons discussed below, it is respectfully submitted that, under
8   the factors of 18 U.S.C. § 3553(a), the Court should now impose a sentence of "time served."

9   **A.    Revels Successfully Worked for Code Tenderloin Despite Serious PTSD**

10  It is undisputed that Mr. Revels suffered serious abuse and neglect while growing up, including
11  sustained sexual abuse from age 7 to 13. PSR ¶¶ 50-52, 101; *see also* BOP Report at 14-15. Not
12  surprisingly, this traumatic history was followed by criminal conduct as a teenager and young adult.
13  PSR ¶¶ 53-54; *see also id.* ¶¶ 34-40. This includes the instant offense of felon firearm possession
14  over two years ago on April 27, 2021, when Mr. Revels was 23 years old. PSR ¶ 15.
15  Then, on September 1, 2021, Mr. Revels was shot in the head while he and the mother of his
16  child were the victims of an armed robbery. PSR ¶ 58. The shooting resulted in a serious (though
17  luckily non-life threatening) injury, including a parietal contusion (brain bruise), requiring ongoing
18  care from a variety of doctors as well as a psychotherapist to deal with subsequent post-traumatic
19  stress and anxiety. *See id.* As a result of this injury, Mr. Revels was placed on several medications.
20  PSR ¶ 59. Even prior to being shot, Mr. Revels was suffering from PTSD from previous traumas,
21  including from being incarcerated and on the street. PSR ¶ 60.
22  While on pretrial release in the instant case, however, Mr. Revels completely turned his life
23  around. He maintained a stable residence at the Norma Hotel, located at 2697 Mission Street in San
24  Francisco, which provides support for young people who are "justice-involved," including job
25  placement, mentorships, and help finding permanent housing. PSR ¶ 56. Starting in November
26  2021, Mr. Revels was also working for Code Tenderloin as Case Manager/Community Health

---

28  conviction under California Penal 273.5 as a crime of violence under U.S.S.G. § 2K2.1. *See* Part I.A. *infra*.

DEFENDANT'S SUPPL. SENTENCE MEMO
*REVELS*, CR 21–0403 VC

4

Worker, providing counseling, health education/information and outreach to minority and underserved communities, as well as at Positive Directions Equal Change Inc., as an IT Support Specialist. PSR ¶¶ 67-68; *see also* Dkt. 57 Att. B (Letters of Support).

Both Mr. Revels' history of PTSD, and his successful work for Code Tenderloin, were addressed by the recent competency evaluation for Mr. Revels. Specifically, in confirming the diagnosis of PTSD, Dr. Jauregi wrote the following:

> The essential feature of PTSD is the development of characteristic symptoms following exposure to a traumatic event. The trauma itself is the prerequisite for associated symptoms that follow, and these symptoms are expected to emerge shortly after the trauma takes place. Mr. Revels grew up in the inner city of St. Louis where he reported being witness to extreme violence. He witnessed people being shot and stabbed and constantly feared for his safety while in a gang. He reported a history of childhood sexual and physical abuse. While incarcerated, he also witnessed a significant amount of prison violence. The most significant trauma appears to be when he was a victim of an armed robbery in September of 2021 which resulted in a gunshot wound to his head. He has continually reported distressing memories of the event, sleep disturbance, irritability, and anxiety. He also exhibits associated features of mild depression which is common in PTSD. For these reasons he is provided a diagnosis of Posttraumatic Stress Disorder.
>
> His symptoms are currently being managed with medication. As of the writing of this report, he is prescribed Buspirone 15 mg twice daily. A request has also been made for non-formulary Quetiapine 50 mg.

BOP report at 20-21.[3]

Similarly, in finding Mr. Revels competent to proceed in his case, Dr. Jauregi noted the success he experienced working for Code Tenderloin, and in obtaining medical care after being shot:

> Various character letters were written by supervisors and/or co-workers of the defendant during the time he worked for Code Tenderloin, after the shooting and prior to his arrest for the instant offense. They commented on his relentless commitment and compassion, describing him as a valuable mentor. He participated in community outreach, linking unhoused and underserved residents with work, health, and housing resources. He was described as reliable, steadfast, always on time, and extremely caring and helpful. He was noted to go "above and beyond" for clients with a tenacity unmatched by any other employee. His supervisor

---

[3] Dr. Jauregi also diagnosed Mr. Revels with Antisocial Personality Disorder and Illness Anxiety Disorder, care seeking-type, related to his anxiety-based preoccupation with having or acquiring a undiagnosed physical illness. *See* BOP Report at 20-22. Along these lines, Dr. Jauregi wrote that Mr. Revels is prone to focusing in his "'ailments' whether they are legitimate or not." *Id.* at 21-22. Significantly, however, Dr. Jauregi did not find that Mr. Revels was in any way malingering with respect to his PTSD.

> commented that she was "always surprised by his knowledge bank." Another commented that "he brings amazing ideas to the team."
>
> SSI Advocate Anita Kennedy wrote that she met Mr. Revels following his gunshot wound to the head. She wrote that Mr. Revels attended all scheduled meetings, medical appointments, and medical referrals. He emailed timely monthly medical appointment logs and followed every directive given, without excuse or delay, regarding his disability application and medical treatment.

*Id.* at 4. Overall, Dr. Jauregi found that the "prognosis for Mr. Revels is good because he is not severely or cognitively impaired." *Id.* at 22. The ability of Mr. Revels to successfully work for Code Tenderloin despite the PTSD resulting from his serious childhood abuse and a recent gunshot wound to the head is a strong indicator that additional incarceration for his possession of a firearm in April 2021 is not needed to achieve the goals of 18 U.S.C. § 3553(a)(2).

      **B.**    **No Reliable Evidence of Intervening Misconduct Since November 2021**

Prior to August 1, 2022, the performance of Mr. Revels in complying with his conditions of pretrial release appeared to be exemplary, with only one incident since November 2021 for being 15 minutes past curfew on April 29, 2022. PSR ¶¶ 8-9. Unfortunately, on August 1, 2022, Mr. Revels was unexpectedly arrested and charged in state court with an offense he did not commit, specifically alleged domestic violence against the mother of his child, Mikayla Williams, who was not residing with him. *See* PSR ¶ 10.[4] Following his arrest on that incident, state prosecutors in Marin County also brought charges of acquiring or retaining personal identifying information and access card information with the intent to defraud based upon a search of his work backpack and cell phones on March 24, 2022. However, Mr. Revels disputes the government's claim here that there is reliable evidence that he committed these or any other offenses. As such, nothing about his performance on pretrial release weighs against his request for a sentence of "time served."

The facts set forth in the discovery provided by the government regarding this incident are largely uncontested, but they lack context, in effect telling only half the story. As a result, the

---

[4] Notably, Ms. Williams thereafter recanted her false accusation and formally requested that the case against Mr. Revels be dismissed. *See* Dkt. 57 Att. A (Request for Termination of Prosecution). The government here has similarly indicated that it does not seek to rely at the instant sentencing on any allegations of domestic violence, or of assault while Mr. Revels was incarcerated at the Marin County Jail, which are also sharply contested.

DEFENDANT'S SUPPL. SENTENCE MEMO
*REVELS*, CR 21–0403 VC

government cannot meet its burden of proving by at least a preponderance of the evidence that Mr. Revels is guilty of the charged state court fraud offenses.[5] Accordingly, the Court should not take these allegations into account in the instant federal sentencing.

With the aim of obviating the need for an evidentiary hearing, the parties have agreed upon a summary of what the discovery produced by the government shows as to this incident:

> On 03-24-2022, Mr. Revels was subject to a probation search at his residence, 14 Terners Drive #34 in Marin City. Mr. Revels' probation terms included that he was subject to warrantless search, including residence and all electronics, and that cannot have personal identification of others.
>
> During the 03-24-2022 probation search, credit cards belonging to Amy Thelen were found inside his work backpack from the Tenderloin Linkage Center. Ms. Thelen was subsequently interviewed by the Marin County D.A.'s office on 08-19-2022. During that interview, Ms. Thelen stated that she had lost her wallet in San Francisco in February 2022. She last saw her wallet at a massage salon and noticed it was missing the next day at home. It had her California driver license, a few credit cards, a health thrift charge card, and her medical insurance card. Thereafter, she got bank notifications that two of her credit cards were used in San Rafael Target for a $400 purchase. The second charge went through, but the bank covered it as unauthorized by her. Ms. Thelen did not ever file a police report. Instead, she cancelled her credit cards and had new ones issued. When interviewed on 08-19-2022, Ms. Thelen stated that she did not know Tyler Revels.
>
> Also during the 03-24-2022 search, Mr. Revels' probation officer located suspected personal identification information belonging to others in photographs and notes accessible from his mobile phones. However, Mr. Revels was not arrested following the search on 03-24-2022 for any new criminal offense or for violating the terms of his probation. Instead, Mr. Revels' probation officer took possession of his mobile phones and the located credit cards and Mr. Revels remained free on the existing terms of his probation. Mr. Revels' mobile phones were subsequently extracted and searched by the Marin County Sheriff's Office on 07-19-2022. The search revealed photos of SSN and/or state ID cards of three people. The search also revealed notes of DOBs, SSNs, and/or email addresses of eight other persons. A complaint was thereafter filed by the Marin County D.A.'s Office on 08-29-2022 charging Mr. Revels with acquiring or retaining Ms. Thelen's personal identifying information and access card information with the intent to defraud.

---

[5] As a general rule, the government usually need only prove alleged facts to support an increased sentence by a preponderance of the evidence. *See, e.g., United States v. Lonich,* 23 F.4th 881, 910 (9th Cir. 2022) (citation omitted). But where such a factual finding would have a "disproportionate impact" on the sentence, the Ninth Circuit has held that "due process may require the government to demonstrate facts underlying disputed enhancements by clear and convincing evidence." *Id.* (citations omitted).

The defense of Mr. Revels is entirely consistent with this agreed-upon factual summary. Specifically, in March 2022, a woman came into the Tenderloin Linkage Center and spoke to Mr. Revels, who was working there through his employment at Code Tenderloin, and provided him with several cards, including credits cards, in the name of Amy Thelen. *See* PSR ¶ 67. The Tenderloin Linkage Center, which closed in December 2022, was part of San Francisco's Tenderloin Emergency Initiative, created by Mayor London Breed as a temporary site to reduce overdose deaths and increase connections to services, as well as to collect data for future sites and services. Among the services provided by staff there were referrals for drug rehabilitation, detox, methadone and saboxone, housing, foodstamps, childcare and general assistance. In order to receive these referrals, identification was routinely provided to staff at Center.

Along these lines, the woman who came into the Center in March 2022 and provided Mr. Revels with a handful of identifying cards in the name of Amy Thelen appeared, like many people seeking services there, to be under the influence of controlled substances. At the time, Mr. Revels naturally assumed the woman to be Ms. Thelen herself. However, in retrospect, she may instead have been the person who fraudulently used Mr. Thelen's credit cards in February 2022, or someone else who subsequently came into possession of the cards. In any event, the intoxicated woman excused herself to use the bathroom and never returned to claim the cards. As was his practice, Mr. Revels quickly took photos of the cards with his work cellphone in order to create a record of what had been provided to him, and then placed the cards in his work backpack for safekeeping while helping other people until the woman returned from the bathroom. Due to the large number of people seeking services, and the failure of the woman to return from the bathroom, Mr. Revels forgot that he still had her cards in his work backpack until the probation search on March 24, 2022, reminded him that they were still there. Mr. Revels did not ever use, or attempt to use, Ms. Thelen's personal identifying information or access card information with the intent to defraud. Instead, it appears that the fraudulent activity with the credit cards occurred weeks before they were brought into the Tenderloin Linkage Center.

As to the photographs and notes involving the personal identification information of other people, accessible on the cloud through Mr. Revels' cellphone, they may also have been from

identification cards presented to him by people seeking assistance at the Center. There is no evidence that any of those other people ever complained of fraud of any kind, and the government does not claim that any charge or allegation of misconduct has been raised against Mr. Revels (or anyone else) with respect to them. Significantly, as noted above, Mr. Revels' probation officer did not allege that Mr. Revels had violated the terms and conditions of his probation following the search on March 24, 2022, even though one of those conditions expressly provides that he cannot possess the personal identification of others. Nor do any of the pending criminal charges in state court relate to the identifying information of anyone other than Ms. Thelen. Accordingly, the Court should find that the government has not meet its burden of proving up any claim that Mr. Revels engaged in any criminal conduct while on pretrial release in this case.

\*          \*          \*

In sum, notwithstanding the PTSD exacerbated by the gunshot to his head in September 2021, Mr. Revels demonstrated extraordinary efforts toward rehabilitation while on pretrial release. He is quite clearly no longer the person that he was when he possessed the firearm in this case at age 23 in April 2021. Although his progress along these lines has unfortunately been delayed by competency proceedings resulting from the failure to provide him with necessary medication while in custody after he was arrested on meritless criminal charges in state court, on balance the appropriate sentence here is "time served."

## CONCLUSION

For the foregoing reasons, the Court should sentence Mr. Revels to a term of imprisonment of time served followed by three years supervised release.

Dated:   June 8, 2023                                    Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

                    /S
DANIEL P. BLANK
Senior Litigator

DEFENDANT'S SUPPL. SENTENCE MEMO
REVELS, CR 21–0403 VC

9